[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 01-11863
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 3, 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-01457-CV-2

MARIE ANDERSON,
ALVESTER BRAFORT, et al.,

Plaintiffs-Appellants,

versus

H&R BLOCK, INC.,
BENEFICIAL NATIONAL BANK, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

**(April 3, 2002)**

Before TJOFLAT, BARKETT and WILSON, Circuit Judges.

WILSON, Circuit Judge:

The issue we decide on this appeal is whether the plaintiffs' state-law usury

claims are completely preempted by the National Bank Act (NBA), 12 U.S.C. §§

85 and 86, and therefore properly removable to federal court. Although the plaintiffs alleged only state-law claims in their complaint, the district court determined that it had jurisdiction based on the doctrine of complete preemption. We disagree and reverse.

BACKGROUND

The plaintiffs, who as customers of H&R Block, Inc. had taken out tax refund anticipation loans[1] from Beneficial National Bank, brought suit in state court against H&R Block, Beneficial National Bank, and Beneficial Tax Masters, Inc., alleging usury violations[2] along with other state-law claims. The defendants removed the case to federal court on the basis of federal question jurisdiction. The defendants argued that since the NBA provides the exclusive remedy for claims alleging excessive interest against national banks, the plaintiffs' state-law usury claims should be recharacterized as federal claims under the doctrine of complete preemption. The plaintiffs moved to remand the case back to state court, arguing that while §§ 85 and 86 of the NBA may provide a defense to state-law usury

---

[1] In a tax refund anticipation loan, a customer receives the amount of her anticipated tax refund, less fees charged by the lender and the tax preparation service, and in return authorizes the government to deposit the tax refund directly into an account at the bank to repay the loan.

[2] The plaintiffs alleged that the defendants charged excessive interest in violation of Alabama Code § 8-8-1 and the common-law usury doctrine. In addition to the usury claims, the complaint included claims for intentional misrepresentation, suppression of material facts, and breach of fiduciary duty.

2

claims, these provisions do not accomplish complete preemption. The district court denied the motion to remand, holding that removal was proper because federal question jurisdiction existed based on complete preemption. Recognizing that the issue was unsettled in this Circuit, the district court certified for interlocutory appeal the question of whether §§ 85 and 86 of the NBA completely preempt state-law usury claims so as to confer removal jurisdiction. We hold that these sections do not accomplish complete preemption.

DISCUSSION

The question of whether §§ 85[3] and 86[4] of the NBA completely preempt state-law usury claims against a national bank has been the subject of disagreement

---

[3]Section 85 provides, "Any [national bank] may take, receive, reserve, and charge on any loan or discount made . . . interest at the rate allowed by the laws of the State . . . where the bank is located . . . ." 12 U.S.C. § 85.

[4]Section 86 provides,

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred.

12 U.S.C. § 86

3

among other circuits and among district courts within this circuit.[5]  What is at stake in this inquiry is whether §§ 85 and 86 not only provide a defense to state-law usury claims under ordinary preemption, but also confer on defendants the ability to remove the case from state to federal court under the complete preemption doctrine.  For the reasons that follow, we hold that §§ 85 and 86 do not accomplish complete preemption.  We begin by describing the complete preemption doctrine and analyzing how the doctrine has been applied by the Supreme Court and this Court.  Our analysis reveals that the complete preemption inquiry turns on congressional intent – whether Congress not only intended for a federal statute to provide a defense to state-law claims, but also intended to confer on defendants the ability to remove a case to a federal forum.  We conclude that §§ 85 and 86 of the

---

[5]While the Eighth Circuit has held that § 86 completely preempts state-law usury claims, *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991), the Third Circuit disagreed in *Spellman v. Meridian Bank*, 3d Cir. 1996, __ F.3d __ (Nos. 94-3203, 94-3204, 94-3215 to 94-3218, Jan. 12, 1996), *vacated,* 3d Cir. 1996, __ F.3d __ (Nos. 94-3203, 94-3204, 94-3215 to 94-3218, Feb. 16, 1996).  After the Third Circuit vacated the panel decision and ordered a rehearing en banc, the parties settled and the complete preemption issue was left undecided.  14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722.1, at 557 (3d ed. 1998).

Within this circuit, district courts also have reached different results.  *Compare Monday v. Coast to Coast Wireless Cable*, M.D. Ala. 1997, __ F. Supp. __ (Nos. CV-96-A-1321-N, CV-96-A-1539-N, CV-96-A-1720-N, CV-96-A-1722-N, CV-96-A-1723-N, CV-96-1725-N, Feb. 19, 1997) (holding §§ 85 and 86 completely preempt state-law claims within their scope), *with Jones v. Bankboston, N.A.*, 115 F. Supp. 2d 1350, 1356–58, 1360 (S.D. Ala. 2000) (reaching the opposite conclusion).

4

NBA do not accomplish the extraordinary result of complete preemption, because clear congressional intent to permit removal under these sections is lacking.

I

Whether a district court may exercise jurisdiction over this case based on complete preemption is a question of law that we review de novo. *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). As courts of limited jurisdiction, lower federal courts may decide a case only when Article III of the Constitution provides that the federal judicial power extends to the case and when Congress has granted jurisdiction. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). When a federal court acts outside its jurisdiction, it violates principles of separation of powers and federalism, interfering with Congress's authority to demarcate the jurisdiction of lower federal courts, and with the states' authority to resolve disputes in their own courts. *Id.* at 409–10. For this reason, when there are doubts as to whether removal jurisdiction is proper, we favor remand of removed cases. *Id.* at 411.

The removal statute, 28 U.S.C. § 1441(a), provides that any civil action brought in state court may be removed to federal court by the defendant as long as the federal court has jurisdiction in the case. Removal based on federal question jurisdiction, the grounds for removal the district court found here, generally is

5

governed by the "well-pleaded complaint" rule, which provides that a case may be removed only if the plaintiff's properly pleaded complaint reveals that the claim is based on federal law. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983). Under the well-pleaded complaint rule, a case in which the plaintiff asserts only state-law claims may not be removed to federal court based on the existence of a federal defense – even the defense of ordinary preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "Congress has long since decided that federal defenses do not provide a basis for removal." *Id.* at 399.

An exception to the well-pleaded complaint rule is the "complete preemption" doctrine. *BLAB T.V.*, 182 F.3d at 854. Under this doctrine, a defendant may remove a case to federal court even though the plaintiff raises only state-law claims in her complaint, when "the pre-emptive force of a [federal] statute is so extraordinary that it converts an ordinary state common-law complaint

into one stating a federal claim for purposes of the well-pleaded complaint rule."[6]

*Caterpillar Inc.*, 482 U.S. at 393 (internal quotation marks omitted).

The Supreme Court has found complete preemption under two federal statutes – section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). *BLAB T.V.*, 182 F.3d at 855. The complete preemption doctrine was born with little elaboration or explanation in *Avco Corp. v. Aero Lodge Number 735, International Association of Machinists and Aerospace Workers*, 390 U.S. 557, 560–62 (1968), where the Supreme Court treated the plaintiff's state-law claim based on a collective bargaining agreement as a federal claim arising under section 301 of the LMRA, and held that the case was properly removed to federal court. The Supreme Court had not yet begun to use the term "complete preemption" to describe this result, and *Avco* provides little guidance on the scope of the complete preemption doctrine.[7]

---

[6]We have recognized that the doctrine of complete preemption often is confused with the defense of ordinary federal preemption. *BLAB T.V.*, 182 F.3d at 854–55. Ordinary preemption is a defense that may be raised in state court as well as in federal court. *Id.* at 855. As a defense, ordinary preemption does not appear in the plaintiff's well-pleaded complaint, and thus does not give the defendant the ability to remove a case to federal court. *Caterpillar Inc.*, 482 U.S. at 393. Unlike the defense of ordinary preemption, the doctrine of complete preemption gives a defendant the ability to remove the case to federal court. *BLAB T.V.*, 182 F.3d at 854.

[7]Karen A. Jordan, in *The Complete Preemption Dilemma: A Legal Process Perspective*, 31 Wake Forest L. Rev. 927, 951 (1996), remarked that the Supreme Court in *Avco* "provided limited insight into the justification for its holding," since the Court "did not mention the well-

The Supreme Court provided more guidance on the contours of the complete preemption doctrine when it cautiously extended the doctrine to section 502(a) of ERISA in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64–67 (1987). The Court said that without clear indications that Congress intended to permit removal of state claims that fell within the scope of ERISA's civil enforcement provision in section 502(a), the Court would have been "reluctant" to expand the "extraordinary pre-emptive power" recognized by the *Avco* decision under section 301 of the LMRA. *Id.* at 65. After examining section 502(a), however, the Court did find clear indications of congressional intent to permit removal – explicit statements in the legislative history that Congress meant for this provision to be construed in the same fashion as section 301 of the LMRA, and close parallels between the jurisdictional subsection of ERISA's civil enforcement provision and section 301 of the LMRA. *Id.* at 65–66. Because Congress "clearly manifested an

---

pleaded complaint rule, nor did it explain why this case fell outside that rule." The Court explained the *Avco* decision in *Franchise Tax Board*, stating, "The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law . . . ." 463 U.S. at 23 (footnote omitted) (internal quotation marks omitted).

Some courts describe as another example of complete preemption the Supreme Court's decision in *Oneida Indian Nation of New York State v. Oneida County*, 414 U.S. 661, 667 (1974) (agreeing with the Oneida Indian Nation that federal question jurisdiction existed over its right-to-possession claim because the possessory rights of Indian tribes necessarily arise under federal law and treaties). *BLAB T.V.*, 182 F.3d at 855 n.2. *Oneida Indian Nation*, like *Avco*, does not use the term "complete preemption" and provides little guidance on when a court should or should not apply the complete preemption doctrine.

intent to make [these] causes of action . . . removable to federal court," the Supreme Court felt bound to "honor that intent" and find complete preemption. *Id.* at 66.

Outside the contexts of the LMRA and ERISA, this Court has addressed the question of complete preemption only twice, in *Smith v. GTE Corporation*, 236 F.3d 1292, 1310–13 (11th Cir. 2001) (holding that the Federal Communications Act did not accomplish complete preemption)*, and *BLAB T.V.*, 182 F.3d at 857–59 (holding that the Cable Communications Policy Act did not accomplish complete preemption). In those cases, we recognized that the complete preemption doctrine should be carefully limited in scope. We noted that "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Id.* at 856. We recognized that the Supreme Court only "reluctant[ly]" extended the complete preemption in *Taylor*, based on "virtually identical" jurisdictional provisions in the LMRA and ERISA and explicit statements in the legislative history of ERISA that the two statutes should be construed in a like manner. *Id.* at 855 (alteration in original) (internal quotation marks omitted). Finding no similar clear manifestation of congressional intent to permit removal in *BLAB T.V.* or *Smith*, we held that the complete preemption

9

doctrine did not create federal jurisdiction in those cases. *Smith*, 236 F.3d at 1313; *BLAB T.V.*, 182 F.3d at 858.

In determining whether Congress intends for a federal statute to completely preempt state-law claims, courts consider a variety of factors such as "whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions." *Id.* at 857. While we have declined to adopt a specific test for this Circuit, we recognize that all of these tests have the same ultimate goal:

> "to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but *also intended to grant a defendant the ability to remove* the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]."

*Id.* (emphasis added) (alteration in original) (quoting Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L. Rev. 1781, 1797–98 (1998)). In sum, both the Supreme Court and this Court have recognized that the "touchstone" of the complete preemption inquiry is congressional intent. *Taylor*, 481 U.S. at 66; *BLAB T.V.*, 182 F.3d at 857.

II

Since congressional intent is the pivotal issue in the complete preemption inquiry, that is where we must focus our analysis of whether §§ 85 and 86 of the NBA completely preempt state-law usury claims against a national bank. In enacting the NBA, did Congress merely intend for federal law to act as a defense to state-law usury claims against a national bank under ordinary preemption – a defense that just as well could be asserted in state court and applied by state judges? Or did Congress intend that national banks facing usury claims in state court should have the ability to remove the case to a federal forum?

The defendants argue that it would be impossible for a court to find in the NBA the striking indications of congressional intent to permit removal through complete preemption that the Supreme Court relied on in *Taylor*, because the NBA was enacted more than a decade before Congress gave federal courts general federal question jurisdiction, more than two decades before the development of the well-pleaded complaint rule, and more than a century before the articulation of the complete preemption doctrine.[8] Nonetheless, the defendants argue that applying

---

[8]The Judiciary Act of 1875 gave lower federal courts general federal question jurisdiction and general removal jurisdiction in civil cases arising under the Constitution or federal law. Donald H. Zeigler, *Twins Separated at Birth: A Comparative History of the Civil and Criminal Arising Under Jurisdiction of the Federal Courts and Some Proposals for Change*, 19 Vt. L. Rev. 673, 735–37 (1995). Between 1875 and 1887, when the Act was amended, "the well-pleaded complaint rule was not applied in full force to cases removed from state court; the defendant's petition for removal could furnish the necessary guarantee that the case necessarily presented a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 10 n.9.

11

the complete preemption doctrine here would be consistent with Congress's purposes because the historical context of the NBA indicates that Congress was suspicious of state interference with national banks.

The NBA was enacted in 1864[9] in the midst of economic strife during the Civil War. The defendants cite to many statements in the congressional debates surrounding the enactment of the NBA that show Congress's intent to protect the new national banks from unfriendly state legislation. For example, Representative Samuel Hooper of Massachusetts argued that the NBA was necessary so "the currency of the country may be within the control and regulation of a national law applicable to the whole country, instead of being controlled and regulated by State law as it has been heretofore," and stated, "I appeal to the members of the House, and I ask them if they can excuse themselves to their constituents and to posterity if they sacrifice the great interests that are now at stake to the comparatively petty interest of local banking." Cong. Globe, 38th Cong., 1st Sess. 1451 (1864). Based on statements like this from the congressional debates, the defendants ask us to

_____

However, since 1887, "[f]or better or for worse . . . a defendant may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law." *Id.* at 10.

[9]Act of June 3, 1864, 13 Stat. 99 (repealing and superseding the similar act of Feb. 25, 1863). The Act originally was titled "An Act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," but its title was changed in 1874 to "The National Bank Act." 12 U.S.C. § 38.

adopt the reasoning of Judge Anthony J. Scirica in his dissent in *Spellman v. Meridian Bank*, 3d Cir. 1996, __ F.3d __ (Nos. 94-3203, 94-3204, 94-3215 to 94-3218, Jan. 12, 1996) (Scirica, J., dissenting), *vacated,* 3d Cir. 1996, __ F.3d __ (Nos. 94-3203, 94-3204, 94-3215 to 94-3218, Feb. 16, 1996):  that Congress clearly intended that the NBA alter federal state relations and protect national banks from state interference, and therefore the NBA completely preempts state law because "'Congress intended to have usury claims against national banks governed by a body of federal law which the federal courts would apply.'"  14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722.1, at 557 (3d ed. 1998) (quoting *Spellman*, __ F.3d at __ (Scirica, J., dissenting)).

While the congressional debates amply demonstrate Congress's desire to protect national banks from state legislation, they do not demonstrate that Congress desired to protect national banks from facing suit in state court.  *Jones v. Bankboston, N.A.*, 115 F. Supp. 2d 1350, 1360 (S.D. Ala. 2000) (acknowledging that the NBA was meant to protect against "unfriendly legislation by the States," but stating that "the evidence does not demonstrate . . . that Congress was so distrustful of the states' *judicial* systems").  Even before 1875, when Congress gave lower federal courts original federal question jurisdiction and general removal

13

jurisdiction, Congress had provided in a handful of specific acts that federal law would both provide a defense and allow for removal from state to federal court.[10] When Congress enacted the NBA in 1864, it provided that suit could be brought in federal or state court, and it did not provide for removal.[11] Four years later, in the Act of July 27, 1868, Congress allowed for corporations organized under federal law to remove a case from state to federal court by filing a petition that they had a defense arising under federal law – but by amendment, Congress excepted national banks from this removal power. 15 Stat. 226–27 ("*And be it further enacted*, That any corporation, or any member thereof, *orther* [other] than a banking corporation, organized under a law of the United States, and against which a suit at law or in equity has been or may be commenced in any court other than a circuit or district

---

[10] For instance, in the Act of March 3, 1863, 12 Stat. 755 (amended by the Act of May 11, 1866, 14 Stat. 46), Congress provided for a federal defense and provided the right of removal of civil or criminal actions arising out of acts committed under federal authority during the Civil War. *See Mayor & Alderman of City of Nashville v. Cooper*, 73 U.S. 247, 251 (1867); Michael G. Collins, *The Unhappy History of Federal Question Removal*, 71 Iowa L. Rev. 717, 720–21 (1986). The pre-1875 removal statutes are collected in Felix Frankfurter & James M. Landis, *The Business of the Supreme Court: A Study in the Federal Judicial System* 61–62 n.22 (1927), and discussed in Stanley I. Kutler, *Judicial Power and Reconstruction Politics* 143–60, 168 (1968).

[11] Although the 1863 Act provided for suit in federal court and did not mention state court, *see Mercantile Nat'l Bank at Dallas v. Langdeau*, 371 U.S. 555, 558–59 (1963), when Congress replaced the 1863 Act in 1864, section 57 of the Act provided for suit in either federal or state court: "'[S]uits, actions and proceedings, against any association under this act, may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established; or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases . . . .'" *Id.* at 568 (quoting 13 Stat. 116–17).

court of the United States, for any liability or alleged liability of such corporation, or any member thereof as such member, may have such suit removed from the court in which it may be pending, to the proper circuit or district court of the United States, upon filing a petition therefor, verified by oath, either before or after issue joined, stating they have a defence arising under or by virtue of the Constitution of the United States, or any treaty or law of the United States . . . ." (alteration in original)).  *See also* Cong. Globe, 40th Cong., 2d Sess. 4197–98 (1868); 7 Charles Fairman, *History of the Supreme Court of the United States: Reconstruction and Reunion, 1864–88, Part Two*, 394–97 (1987).  This legislative history compels us to reject the defendants' suggestion that the early history of national banks offers clear congressional intent to make claims under the NBA removable.

Since both the Supreme Court and this Court have recognized that congressional intent is the "touchstone" in the complete preemption inquiry, we also must reject the line of cases which have found complete preemption without inquiring into Congress's intent.  The only circuit court opinions that are consistent with this suggestion are *M. Nahas & Co. v. First National Bank of Hot Springs,* 930 F.2d 608, 612 (8th Cir. 1991), and *Krispin v. May Department Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000), which follows the *M. Nahas & Co.* reasoning.

Without examining congressional intent, the Eighth Circuit found complete preemption in *M. Nahas & Co.* based solely on well-settled law that § 86 provides the exclusive remedy for usury claims against a national bank.[12] 930 F.2d at 612. However, in *Jones*, Chief District Judge Charles R. Butler, Jr. criticized the Eighth Circuit's lenient complete preemption standard as inconsistent with Supreme Court and Eleventh Circuit precedent and held that the NBA did not completely preempt state-law usury claims so as to allow for removal. 115 F. Supp. 2d at 1361. We consider *Jones* to be a sound application of the principles reflected in the complete preemption cases decided by the Supreme Court and this Court, and we take a similar approach here.

In *Jones*, the court concluded that the sole justification the *M. Nahas & Co.* holding – that § 86 provides the exclusive remedy for usury claims against a national bank – was not by itself sufficient to establish complete preemption. *Id.* at 1355–56. The court in *Jones* arrived at this conclusion by examining the Supreme

---

[12]Federal law governs the amount of interest a national bank may charge, *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 308 (1978), and provides the exclusive remedy for usury claims against a national bank, *McCollum v. Hamilton Nat'l Bank of Chattanooga*, 303 U.S. 245, 247 (1938); *Evans v. Nat'l Bank of Savannah*, 251 U.S. 108, 109 (1919); *Farmers' & Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 32 (1875). But this does not provide an answer to the complete preemption inquiry – "'[C]omplete preemption principally determines not whether state or federal law governs a particular claim, but rather whether that claim will, irrespective of how it is characterized by the complainant, [serve as the basis for federal question jurisdiction].'" *BLAB T.V.*, 182 F.3d at 855 (alteration in original) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 517 (5th Cir. 1998)).

16

Court's analysis in *Taylor*, where before beginning its complete preemption inquiry, the Supreme Court acknowledged that ERISA preempted the plaintiff's state-law claims and provided an alternative federal remedy. *Id.* at 1356 (citing *Taylor*, 481 U.S. at 64). "Were the existence of an 'exclusive federal remedy' the only requirement for complete preemption, the . . . Court would have concluded its analysis at this point and declared the plaintiff's claims completely preempted." *Id*. However, the *Taylor* Court went on to say that it would be "reluctant" to find complete preemption on this basis alone. 481 U.S. at 65. The *Taylor* Court then conducted a searching inquiry into congressional intent, focusing on the parallels to the LMRA and explicit statements in the legislative history that ERISA should be construed like the LMRA to find Congress had "clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 66. The *Jones* court concluded – and we agree – that the analysis in *Taylor* indicates that where there are no further indications of congressional intent to permit removal, the existence of an exclusive federal remedy generally will not be enough to achieve complete preemption. 115 F. Supp. 2d at 1356.

The *Jones* court also noted that this Court uses a more demanding standard for complete preemption than the Eighth Circuit used in *M. Nahas & Co. Id.* at

17

1355–56. "[T]he only justification offered by the *Nahas* Court for its ruling was that the National Bank Act accomplishes 'ordinary' preemption of state law claims for excessive interest and provides an alternative federal cause of action for the preempted state claim." *Id.* at 1355. We previously have recognized that the mere provision of a federal cause of action cannot be dispositive in the complete preemption inquiry:

> If the creation of a federal cause of action served as the sole litmus test for congressional intent, complete preemption would apply to every federal statute that creates such a cause of action and complete preemption would be common rather than extraordinary. . . . Congress may create a federal cause of action without also providing sufficient evidence of its intent that state causes of action are to be considered as arising under the federal statute and thus removable to federal court.

*BLAB T.V.*, 182 F.3d at 859 n.3. Our precedent demands clear congressional intent to permit removal. Like the Supreme Court, we have not yet extended the complete preemption doctrine beyond section 301 of the LMRA and section 502(a) of ERISA. We cannot extend the complete preemption doctrine here, where clear congressional intent to permit removal is lacking.

## CONCLUSION

Under our federal system, both state and federal courts are entrusted to faithfully follow federal law. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S.

18

237, 247–48 (1952) ("State courts are bound equally with the federal courts by the Federal Constitution and laws.").  State courts in Alabama – the forum from which the defendants sought removal – have a long history of faithfully applying the NBA.  *E.g.*, *Lowery v. First Nat'l Bank of Oneonta,* 196 So. 891, 892 (Ala. 1940) ("The penalties imposed upon a national bank for charging a higher rate of interest than allowed by the law of the state where located are fixed by the Federal Banking Law."); *Florence R.R. & Improvement Co. v. Chase Nat'l Bank,* 17 So. 720, 721 (Ala. 1895) ("[T]he penalty prescribed by the national banking statute for usurious discounting paper by national banks is exclusive, and those imposed by state statutes cannot be applied and enforced."); *Helms v. First Alab. Bank of Gadsden, N.A.,* 386 So. 2d 450, 452 (Ala. Civ. App. 1980) ("[S]ince Congress has provided the penalty for usury [with § 86], that action preempts the field, leaving no room for varying state penalties.").

Because state courts, like federal courts, are competent in determining when state-law claims are preempted by federal law, removal to a federal forum based on the doctrine of complete preemption has been the exception, not the rule. Recognizing that the complete preemption doctrine works to trump the well-pleaded complaint rule as well as the maxim that a plaintiff is the master of the complaint and may avoid a federal forum by relying exclusively on state law, the

19

Supreme Court expanded the doctrine only "hesitatingly" when there was a clear showing of congressional intent to permit removal. *BLAB T.V.*, 182 F.3d at 856. Since we find no clear congressional intent to permit removal under §§ 85 and 86 of the NBA, we therefore hold that while these sections may provide a defense to state-law usury claims, they do not accomplish complete preemption so as to permit removal.

We therefore REVERSE the district court's order denying the plaintiffs' motion to remand and REMAND to the district court for further proceedings consistent with this opinion.

TJOFLAT, Circuit Judge, dissenting:

The majority decides today that the provisions in the National Bank Act ("NBA") addressing usurious interest, 12 U.S.C. §§ 85 and 86, do not completely preempt plaintiffs' state law claims, and, as a result, the claims are not removable to federal court. The majority bases this conclusion on an absence of legislative history confirming that the NBA's drafters intended that cases of usurious interest be heard and decided in a federal forum. I do not disparage the majority's emphasis on congressional intent as the touchstone of complete preemption analysis. Rather, I take issue with the majority's narrow conception of congressional intent as something only inferable from an enactment's legislative history, here the NBA's. Sometimes Congressional intent is determined by looking to statutes already on the books.[1] In this case, I suggest that the Judiciary Act of 1789 ("Judiciary Act" or "Act"), ch. 20, § 9, 1 Stat. 76-77 (1789), is highly relevant in determining whether the drafters of the NBA intended that lawsuits

---

[1] "We do not start from the premise that [the statutory] language is imprecise. Instead, we assume that in drafting this legislation, Congress said what it meant." United States v. LaBonte, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677, 137 L. Ed. 2d. 1001 (1997). Likewise, our own precedent directs us to "begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). Legislative history is an oft-used and important tool in the task of statutory interpretation when ambiguities exist in the language. Still, "[w]hen the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." Id. at 976.

seeking relief from usurious interest rates, which is what the plaintiffs seek here, be litigated in a federal forum.

The Judiciary Act, enacted by the first Congress, established the federal judiciary. It created thirteen judicial districts, which became the organizational units of the lower federal courts. The degree of precision in language employed by the drafters of the Act indicates that they had a strong understanding of jurisdictional principles and their role in case management and development of the law. For some federal causes, they gave exclusive jurisdiction to the federal courts; for others, they provided that the district courts would have concurrent jurisdiction with the state courts.[2] Where the drafters saw the need for uniformity of decision or avoidance of state interference, they gave the district courts exclusive jurisdiction. "[S]uits for penalties and forfeitures incurred, under the laws of the United States" were put squarely in that category. Judiciary Act of 1789, ch. 20, § 9(b), 1 Stat. 76-77 (1789).

We must assume that Congress was well aware of this provision – in particular, the word "forfeiture" – when, seventy-four years later, in the midst of the Civil War, it enacted the NBA. Section 85, as reproduced by the majority in

---

[2] For example, concurrent jurisdiction was provided with respect to "all causes where an alien sues for a tort only in violation of the law of nations or a treaty of the United States." Judiciary Act, ch. 20, § 9(b), 1 Stat. 77 (1789).

22

note four, defines usurious interest by relying on specific discount commercial paper rates or state rates. Section 86 provides a cause of action for a debtor who was wrongly charged, or who has already paid, such interest on a loan. Although the majority duplicated section 86 in note five, it is useful to do so again for purposes of focusing on the specific language employed:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a <u>forfeiture</u> of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid . . . may recover back, in an action in the nature of an action of debt, <u>twice the amount of the interest thus paid</u>.

12 U.S.C. § 86 (emphasis added). In sum, section 86 furnishes a victim of usurious interest two possible remedies: (1) the victim can obtain a judgment declaring <u>forfeiture</u> of the entire interest of the debt if usurious interest is sought; or (2) if such interest has already been paid, the victim may bring a suit to recover twice the amount collected as a <u>penalty</u> to the lender.

In the case before us, the plaintiffs claim that Beneficial National Bank, a national banking association, charged them usurious interest rates on tax refund anticipation loans. Plaintiffs' allegations are so unspecific that it is difficult to say whether the plaintiffs are seeking the forfeiture of the interest they are being charged or whether they are seeking twice the amount of interest they have paid or

23

whether they are pursuing both remedies. I say this because there are twenty-six plaintiffs and the complaint does not tell us, with respect to any of the plaintiffs, (1) when the loan was made, (2) the terms of the loan, and (3) the status of the loan – that is, whether the plaintiff had paid any interest, and if so, how much, prior to filing suit. I assume that the plaintiffs' loans have not been paid in full. Therefore, to the extend they have paid interest, they are seeking, in the words of section 86, "twice the amount of the interest paid" and "forfeiture" of the amount still due.

The only way to avoid the operation of the Judiciary Act's mandate that "suits for penalties and forfeitures incurred" be filed in federal court is to say that the NBA amended that mandate by implication.[3] In light of our statement in Patel v. Quality Inn South, 846 F.2d 700, 704 (11th Cir. 1988), that "amendments by implication are disfavored," I suggest that this method of avoiding the Judiciary Act's mandate is unavailable, and that the Act's mandate should therefore dictate our decision.[4]

---

[3] Although the majority does not mention the Judiciary Act "suits for penalties and forfeitures" provision, and therefore does not discuss whether the NBA amended that provision by implication, the majority does say that the reference to state courts in the NBA's "Venue of suits" provision forecloses the argument that the federal courts have exclusive jurisdiction of a claim of usury.

[4] That the majority has not considered the application of the Judiciary Act in this case is not surprising. As far as I know, no court faced with the jurisdiction issue we are deciding has considered the relevance of the Judiciary Act provision I rely on here. See e.g., Spellman v. Meridian Bank, __ F.3d __ (Nos. 94-3203, 94-3402, 94-3215 to 94-3218) (3d Cir. 1996) (vacated on grant of rehearing en banc then appeal dismissed by parties after settlement; M.

24

Nahas. & Co. v. First. Nat'l Bank, 930 F.2d 608 (8th Cir. 1991); Jones v. Bankboston, N.A., 115 F. Supp. 2d. 1350 (S.D. Ala. 2000).