**Thomas J. McGETTIGAN, Cathy S. McGettigan, and Pauline C. Langham, on behalf of themselves and a punitive class of all others similarly situated Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. CIV.A.02–0849–CB–M.**

United States District Court,
S.D. Alabama,
Southern Division.

Feb. 3, 2003.

Brian C. Anderson, Matthew M. Shors, O'Melveny & Myers LLP, Washington, DC, Gregory L. Schuck, D. Alan Thomas, D. Alan Thomas, Jason Robert Watkins, Huie, Fernambucq & Stewart, LLP, Birmingham, AL for Defendant.

Gregory B. Breedlove, Richard T. Dorman, David G. Wirtes, Jr., Cunningham, Bounds, Yance, Crowder & Brown, Mobile, AL, for Plaintiffs.

## MEMORANDUM AND OPINION

BUTLER, Chief Judge.

The following matter comes before the Court on Plaintiffs' Motion to Remand.

Docs. 5 & 6. Defendant has filed a Response in Opposition. Doc. 13. For the following reasons, the Court finds that Plaintiffs' motion should be **GRANTED**.

## I. BACKGROUND

Plaintiffs allege that between 1996 and 2001 Defendant Ford Motor Company manufactured automobiles with engines containing defective intake manifolds. Doc. 6 at p. 1. Plaintiffs assert that the intake manifold is defective because it is manufactured with a plastic component that cannot withstand the temperature changes to which such intake manifolds are customarily exposed. *Id.* If an intake manifold fails, then it may cause the automobile's engine to seize. *Id.* Plaintiffs contend that Defendant recognized this defect and recalled automobiles purchased by fleet consumers. *Id.* at p. 2. However, Plaintiffs further contend that Defendant has left individual consumers, because of their non-existent economic leverage, "to tough it out and suffer the risks of foreseeable engine failures." *Id.*

Along those general lines, Plaintiff Cathy McGettigan contends that her automobile engine failed as a result of the defective manifold intake. Doc. 6 at p. 2. In bringing this putative class action, Plaintiffs only allege that Defendant is liable for violating the Magnuson–Moss Warranty Act [hereinafter the "Warranty Act"]. Complaint at ¶¶ 13–31. The prayer for relief in the complaint reads:

> WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:
>
> 1. For an order certifying that the action may be maintained as a class action;
>
> 2. For injunctive and equitable relief in the form of an order requiring Ford to notify the consuming public of the defective condition of the composite/plastic intake manifold defect, and its potential for causing failure causing damage to personal property as well as serious injury and death;
>
> 3. For disgorgement and/or restitution of ill-gotten revenues and/or profits;
>
> 4. For injunctive relief in the form of an order that part or all of any restitution of disgorged monies be used for a program to repair or retrofit vehicles with defective composite/plastic intake manifolds, or to pay for the costs thereof, in a manner that will correct their inordinate propensity to malfunction;
>
> 5. That the Court enjoin Defendant and/or enter judgment in its favor, and in favor of the class, and against Ford in such an amount as compensatory damages, interest, costs and attorney's fees.

Complaint (Prayer for Relief). In addition, Plaintiffs allege that the cost to replace an intake manifold is approximately $1,200 per vehicle. *Id.* at ¶ 30. Defendant promptly removed the action to this Court on both the basis of federal question and diversity jurisdiction. Doc. 1 at ¶ 3. Thereafter, Plaintiffs moved the Court to remand the action back to state court. Docs. 5 & 6.

## II. REMAND

The Eleventh Circuit has consistently enforced the rule that the removal statute is to be strictly construed against removal. *See, e.g., University of South Alabama v. The American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe the removal statutes strictly." *American Tobacco,* 168 F.3d at 411. "[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Id.* Finally, the removing party bears a heavy burden of demonstrating federal jurisdiction. *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1373 (11th Cir.1998).

To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (citations omitted).

## III. DIVERSITY JURISDICTION

Here, both parties agree that complete diversity exists, but disagree over whether the amount in controversy requirement is met. Doc. 13 at pp. 3–4. More specifically, both parties disagree over whether Plaintiffs' claims may be aggregated for the purpose of diversity jurisdiction. Doc. 13 at pp. 3–11.

"When jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1261 (11th Cir.2000). Dismissal of a case brought under the diversity jurisdiction statute is proper where the pleadings make it clear "to a legal certainty that the claim is really for less than the jurisdictional amount." *Leonard v. Enter. Rent A Car,* 279 F.3d 967, 972 (11th Cir.2002) (*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). When a plaintiff seeks a recovery that is indeterminate in amount, then diversity jurisdiction exists where a removing defendant establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Leonard,* 279 F.3d at 972. Conclusory allegations in the notice of removal stating that the amount in controversy requirement is met, without setting forth the underlying facts supporting such a claim, is insufficient to meet the defendant's burden. *Id.*

Here, Defendant asserts that the sole question concerning diversity jurisdiction is whether Plaintiffs' claims may be attributed to the class as a whole, i.e. aggregation, instead of divided between the class members, in order to meet the amount in controversy requirement. Doc. 1 at ¶ 7. However, it is not quite that simple in that the Court must still determine, if aggregation is appropriate, if Defendant has established by a preponderance of the evidence that Plaintiffs' claims satisfy the amount in controversy requirement. Nevertheless, if aggregation is not appropriate, then Defendant inherently concedes that diversity jurisdiction does not exist.

### A. Aggregation Standard

 Aggregation of individual stakes to reach the amount in controversy requirement is permitted where multiple plaintiffs have a unified, indivisible interest in some common fund that is the object of the litigation. *Morrison,* 228 F.3d at 1262.

When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Id.* (*quoting Zahn v. International Paper Co.,* 414 U.S. 291, 295, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)). The Eleventh Circuit has found that a "common and undivided interest" only exists when "the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Id.* Strictly construed, aggre-

gation is only allowed "where there is not only a common fund from which the plaintiffs seek relief, but where the plaintiffs also have a joint interest in that fund, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs, then there can be no aggregation.... In other words, the obligation to the plaintiffs must be a joint one." *Id.* at 1263 (*quoting Eagle Star Ins. Co. v. Maltes,* 313 F.2d 778, 781 (5th Cir. 1963)). Common fund cases usually involve claims to "a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which [the multiple plaintiffs] claim as common owners or in which they share a common interest arising under a single title or right." *Id.* (*quoting Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1424 (2d Cir.1997)).

Defendant contends that the nature of relief that Plaintiffs seek inures to the benefit of the whole class and must be aggregated. Doc. 13 at p. 5. Defendant alleges two types of relief that are due to be aggregated: 1) Plaintiffs' request that any disgorged monies from Defendant be used for a program to repair or retrofit vehicles with the defective manifold intake; and 2) Plaintiffs' request that Defendant notify the consuming public of the defective manifold intake and its potential for causing damage to personal property as well as serious injury and death. *Id.* at pp. 5–11.

### B. Aggregation of the Disgorgement Claim

■ First, Defendant claims that requiring it to disgorge all its profits for the specific purpose of creating a program to repair and retrofit vehicles is a classic example of a case in which multiple plaintiffs have a unified, indivisible interest in a common fund that is the object of litigation. Doc. 13 at p. 5. The Eleventh Circuit, in *Morrison,* dealt with the issue of aggregation and disgorged profits. *Morrison,* 228 F.3d at 1263–64. In

*Morrison,* the plaintiffs, as a putative class, sued the defendant insurance companies for excessive premiums charged on their automobiles. *Id.* at 1259. In their complaint, plaintiffs sought the court to compel the defendants to disgorge part of the amount of the collected premiums in order to establish a common fund of recovery on behalf of the class. *Id.* at 1264. The Eleventh Circuit held that the disgorged monies were not damages in which the class had a common and undivided interest because the class claims were based on individual contracts and any recovery from the common fund would be based on a plaintiff's individual insurance policy. *Id.*

In *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1427 (2d Cir.1997), cited by the Eleventh Circuit as an illustrative case involving common funds and aggregation, the Second Circuit stated that a disgorgement of funds created to facilitate the litigation process has nothing necessarily to do with whether the plaintiffs share a pre-litigation interest in the subject of the lawsuit. *Gilman,* 104 F.3d at 1427. The Second Circuit found that the inquiry in common fund cases should center on the nature of the right asserted, and not on whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs. *Id.*

Here, Plaintiffs assert that each of their Warranty Act claims arise from their individual warranty contracts with Defendant and recovery will be based on those warranties. Doc. 6 at p. 10. Accordingly, it is clear to the Court that Plaintiffs are not suing in order to vindicate their rights in the common fund of disgorged monies, but that the common fund will only be used to facilitate the litigation process. Furthermore, the common fund will benefit each member of the class only to the extent that it is used to repair or retrofit the defective

manifold intake on their respective cars. Therefore, each plaintiff will only receive the benefit of the cost it takes to replace or repair the manifold intake on their respective vehicles which is approximately $1,200. Complaint at ¶ 30. Thus, the disgorgement claim may not be attributed to each Plaintiff here.[1]

### C. Aggregation of the Public Notification Claim

 Next, in order to meet the amount in controversy requirement, Defendant contends that the Court should aggregate Plaintiffs' request that Defendant create a program to notify the consuming public of the defective manifold intake. Doc. 13 at pp. 9–10. Defendant asserts that this duty, if ordered, would be owed to the unnamed plaintiffs as a group since the named individual plaintiffs are already aware of the alleged defect. *Id.* at p. 10. Since the type of relief requested here by Plaintiffs is injunctive in nature, the Court values the benefit that would ensue from Plaintiffs' perspective. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir.2001).

The Eleventh Circuit, in *Smith*, faced a similar type of notification claim. *Smith*, 236 F.3d at 1309. There, the plaintiffs sought to require the defendant telephone company to notify its customers that the failure to abide by certain portions of the lease requirement cannot result in the termination of telephone service. *Id.* The Circuit Court found that the requested injunction would protect the rights of class members that arise from their individual

contracts with the defendant. *Id.* The Circuit Court followed up with the premise that when a plaintiff's rights arise from individual contracts with a defendant, then those separate and distinct rights may not be aggregated. *Id.*

Likewise, here, Plaintiffs' claims are based on a transferable written manufacturer's warranty issued by Defendant, which warranted that any existing defects in automobiles would be repaired, free of charge, to the purchaser or any subsequent owner. Complaint at ¶ 8. Therefore, Plaintiffs' claims arise from the individual warranty possessed by each member of the class. Thus, the notification claim may not be aggregated because Plaintiffs' claims are separate and distinct. In light of the fact that Plaintiffs' claims may not be aggregated, the Court holds that diversity jurisdiction does not exist over this matter because the amount in controversy requirement is not satisfied.

### IV. FEDERAL QUESTION JURISDICTION

 Defendant also contends that the Court has subject matter jurisdiction over the action pursuant to federal question jurisdiction. Doc. 1 at ¶¶ 12–18. Whether an action raises a federal question is governed by the well-pleaded complaint rule which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir.2002).

---

**1.** The Court notes the split of authority on the issue of whether disgorgement claims may be aggregated. *See In re Microsoft Corp. Antitrust Litigation*, 127 F.Supp.2d 702, 719–21 (D.Md.2001) (listing cases on both sides of the issue). However, the Court applies the rule barring the aggregation of disgorgement claims because the Eleventh Circuit, in *Morrison*, disallowed the aggregation of a disgorgement claim under circumstances similar to

the present matter. Thus, any uncertainties of the law should be viewed in the light most favorable to the non-movant. Also, the Eleventh Circuit has quoted approvingly of *Gilman*, a case similar to the present action, as a good example of a common fund case. *See Morrison*, 228 F.3d at 1263. *Gilman* prohibited aggregation of disgorged monies. *Gilman*, 104 F.3d at 1427.

The plaintiff is the master of his or her claim and may avoid federal jurisdiction by exclusive reliance on state law. *Behlen,* 311 F.3d at 1090. Moreover, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if both parties agree that the federal defense is the only question at issue. *Id.*

■ Here, Plaintiffs, in their complaint, only bring one count, which is based on the Warranty Act. Complaint at ¶¶ 21–31. The Warranty Act states that any claim brought under its provisions may only be heard exclusively in state court "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). Here, the action does not arise from federal law, for the purposes of the well-pleaded complaint rule, as it may only be entertained in state court because there are only three named plaintiffs in the putative class. *See generally* Complaint. Thus, the well-pleaded complaint rule is not satisfied.

### A. Complete Preemption

■ However, Defendant contends that the Warranty Act is completely preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30118 *et seq.* [hereinafter "the Safety Act"], because Plaintiffs seek injunctive relief in the form of a recall. Doc. 13 at pp. 12–23. Under the Safety Act, an automobile manufacturer must recall any vehicle that it determines has a safety-related defect. 49 U.S.C. §§ 30118–20. Here, Defendant alleges that, in order for a recall to occur, Plaintiffs would have to demonstrate that Defendant violated the Safety Act by selling vehicles containing a safety-related defect. Doc. 1 at ¶ 16. Furthermore, Defendant contends that, pursuant to the Safety Act, Plaintiffs would have to establish that the defective manifold intakes are safety-related. *Id.* at ¶¶ 13, 16. Thus, Defendant asserts that Plaintiffs' request, that Defendant recall the vehicles and repair or replace the manifold intakes, necessarily implicates the Safety Act regardless of the fact that the relief is sought under the Warranty Act. Doc. 13 at pp. 12–23.

The complete preemption doctrine[2] is an independent corollary to the well-pleaded complaint rule. *Behlen,* 311 F.3d at 1090. Occasionally, federal courts conclude that a federal statute is so extraordinarily preemptive in force that it converts a state law claim into a federal claim for the purposes of the well-pleaded complaint rule. *Id.* "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (*quoting Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Furthermore, the complete preemption doctrine is only used sparingly and reluctantly. *See Anderson v. H & R Block, Inc.,* 287 F.3d 1038, 1043 (11th Cir.2002).

The Eleventh Circuit has recognized that the touchstone in the complete preemption doctrine is congressional intent. *Anderson,* 287 F.3d at 1043. Although declining to set forth a specific test to find complete preemption, the Circuit Court found that the ultimate goal is:

> to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to re-

**2.** The Supreme Court, to date, has only found complete preemption under two federal statutes, ERISA and LMRA. *See Anderson v. H & R Block, Inc.,* 287 F.3d 1038, 1042 (11th Cir.2002).

move the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one].

*Id.* At least two federal district courts, after examining the congressional intent behind the legislation, have determined that Congress did not intend for the Safety Act to completely preempt state law. *See Burgo v. Volkswagen,* 183 F.Supp.2d 683 (D.N.J.2001); *and Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260 (N.D.Ala. 1998).

The district court, in *Campbell,* found that the Safety Act did not contain any "hints that Congress intended it to completely preempt state law, and no broad provisions granting federal court jurisdiction over vehicle safety issues." *Campbell,* 19 F.Supp.2d at 1273. In addition, the district court, in *Burgo,* held that the Warranty Act was not completely preempted by the Safety Act. *Burgo,* 183 F.Supp.2d at 689. In *Burgo,* the plaintiffs, as a putative class, filed suit against the defendant car manufacturer based on the Warranty Act alleging that their tires suffered from a variety of defects. *Id.* at 685. The plaintiffs sought monetary relief as well as injunctive relief compelling the defendants to recall the defective tires. *Id.*

The district court noted two portions of the Safety Act which mitigated against finding congressional intent for complete preemption. *Id.* at 689–90. First, section 30103(e) states that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e). Accordingly, the district court found that Congress intended to preserve state law claims regarding automobile safety standards. *Burgo,* 183 F.Supp.2d at 689. Thus, the district court, like in *Campbell,* noted that the exact scope of preemption pursuant to the Safety Act is open to debate. *Id.* at 690.

Second, section 30103(d) states that a recall conducted pursuant to section 30120(b) does not displace any other "rights and remedies under other laws of the United States or a State." 49 U.S.C. § 30103(d). In considering the defendant's assertion that Congress never intended to permit state courts to order their own recall, the district court found that this assertion does not demonstrate congressional intent to completely preempt all state-based remedies for automobile defects. *Burgo,* 183 F.Supp.2d at 690. Quite the opposite, the district court ruled that the language of section 30103(d) indicated that Congress wanted to preserve the role of the states in automobile safety standards. *Id.*

The Court finds the reasoning in *Campbell* and *Burgo* to be persuasive. The text of the Safety Act expressly allows other state remedies to survive in the field of automotive safety, which is not evidence that Congress intended to transform state law causes of action into federal ones. Thus, the Court holds that the Warranty Act is not completely preempted by the Safety Act. In light of this conclusion, the Court does not have federal question jurisdiction over the matter because Plaintiff's complaint fails the well-pleaded complaint rule as there is no federal claim on the face of the complaint. However, the holding notwithstanding, Plaintiff's Warranty Act claim still may be ordinarily preempted by the Safety Act. Nonetheless, that is a determination for the state court to make. *See Burgo,* 183 F.Supp.2d at 690.

## V. COSTS AND FEES

Plaintiffs move the Court for costs and fees pursuant to 28 U.S.C. § 1447(c). Doc. 6 at p. 23. Section 1447(c) provides, "An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C.

§ 1447(c). Awarding costs and expenses is solely in the discretion of the district court. *See IMCO USA, Inc. v. Title Ins. Co. of Minn.,* 729 F.Supp. 1322, 1324 (M.D.Fla.1990). One court interpreting 28 U.S.C. § 1447(c) has used the standard of whether "from aught that appears, the defendants ... have acted reasonably on the basis of the information available at the time of removal." *Howard Griggs Trucking, Inc. v. American Cent. Ins. Co.,* 894 F.Supp. 1503, 1510 (M.D.Ala.1995). Another court has determined that the merit of the removal should be the controlling factor. *Gray v. New York Life Ins. Co.,* 906 F.Supp. 628, 637 (N.D.Ala.1995).

Here, the Court finds that Defendant acted reasonably upon removing the case in light of the circuit split on the issue of aggregation of disgorgement claims. At the time of removal, Defendants petition contained merit as there was authority in the federal judicial system that allowed the amount in controversy requirement for diversity jurisdiction to be satisfied by attributing disgorged monies to each member in a class. Thus, the Court finds that Defendant should not be taxed costs and fees.

## VI. CONCLUSION

The Court finds that it is without subject matter jurisdiction over the matter. First, Plaintiffs' claims may not be aggregated in order to satisfy the amount in controversy requirement for diversity jurisdiction. In the absence of aggregation, Defendant is unable to establish by a preponderance of the evidence that the matter concerns an amount in excess of $75,000. Second, the well-pleaded complaint rule, which governs federal question jurisdiction, prohibits jurisdiction over the matter because Plaintiffs' claims do not arise from federal law. Furthermore, the complete preemption doctrine is unavailable to Defendant as a basis for the removal of the action to federal court.

## ORDER

In light of the foregoing, the Court finds that Plaintiffs' Motion to Remand is due to be and hereby is **GRANTED**. However, the Court finds that Plaintiffs' Motion for Costs and Fees is due to be and hereby is **DENIED**.

Pursuant to 28 U.S.C. § 1447(c), the present case, *McGettigan v. Ford,* CV–02–849–CB–M, is to be **REMANDED** to the Circuit Court for Mobile County, Alabama, and the Clerk is accordingly **DIRECTED** to transmit a copy of this order to the Clerk of the Circuit Court of Mobile County, Alabama.